

ORIGINAL

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

# 222047

| | | |
|---|---|---|
| Tejas P. SHAH, | § | |
| | § | |
| | § | |
| **and** | § | |
| **SELECTIONS, INC.** | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| **Michael CHERTOFF,** | § | |
| **Secretary** | § | **Case No:**_____ |
| Department of Homeland Security, | § | |
| | § | **3  05CV1608-K** |
| **and** | § | |
| **Evelyn UPCHURCH, Director,** | § | |
| Texas Service Center, | § | |
| U.S. Citizenship and Immigration Services, | § | |
| Defendants | § | |

**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FILED**

AUG 12

CLERK, U.S. DISTRICT COURT
By _____
           Deputy

# PLAINTIFF'S ORIGINAL COMPLAINT
## FOR DECLARATORY JUDGEMENT
## AND INJUNCTIVE RELIEF

COMES NOW Tejas SHAH and Selections Inc (SHAH hereinafter), Plaintiffs in the above-styled and numbered cause, and for cause of action would show unto the Court the following:

## STATEMENT OF THE CASE

1.      This is an action seeking declaratory judgment and injunctive relief from the decision

of the United States Citizenship and Immigration Services (hereinafter, "CIS") to

**PLAINTIFF'S ORIGINAL COMPLAINT**                                    **PAGE  1**

deny Plaintiffs' petition to extend Plaintiff Shah's nonimmigrant worker status. Plaintiffs petition the Court to compel the Secretary of Homeland Security and the CIS to immediately issue all appropriate documents and take all appropriate action to execute and process Plaintiffs' extension of nonimmigrant worker status, on the ground that the CIS wrongfully failed to grant that extension under §101(a)(44)(C) of the Immigration and Nationality Act. 8 U.S.C. §1101(a)(44)(C).

## PARTIES

2.      Tejas SHAH ("SHAH") is a 25 year old male native and citizen of India. Beginning in approximately December 1998, he has worked at Mahendra Jewels as an Electronic Data Processing (EDP) Manager in Mumbai, India. Mahendra Jewels is related to Selections Inc, a Texas corporation doing business as C. Mahendra Jewels. Therefore, on or around April 3, 2000, Plaintiff Selections, Inc. ("SELECTIONS") petitioned for SHAH to enter the United States under a "L-1A" nonimmigrant intracompany transfer visa as an EDP Manager for the Texas affiliate. The petition was approved on May 3, 2000 with a validity period of three years: June 1, 2000 to May 31, 2003. SHAH applied for an L-1A nonimmigrant visa at the American Consulate in Mumbai, India, and entered the United States in August 2000. A timely petition to extend the original L-1A Visa was submitted on May 8, 2003, but this extension was denied by the INS Texas Service Center on September 25, 2003.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                      **PAGE 2**

3.     Selections Inc. ("SELECTIONS") is a Texas corporation engaged in the import, marketing, and wholesale of loose diamonds and finished diamond jewelry. SELECTIONS is the petitioning employer for Mr. SHAH. The company has 7 employees and in 1999 had gross sales of $6.5 million dollars. On or around April 3, 2000, SELECTIONS petitioned for a L-1A visa on behalf of Mr. Shah as it increased staff. Selections Inc. is an affiliate of C. Mahendra Jewels located in Mumbai, India. Mahendra Jewels is the prior employer of Mr. Shah.

4.     Defendant Michael CHERTOFF is Secretary of Homeland Defense, and this action is brought against him in his official capacity. He is generally charged with enforcement of the Immigration and Nationality Act ("INA"), and is further authorized to delegate such powers and authority to subordinate employees of the Department of Homeland Security 8 CFR § 2.1(a) and 8 CFR § 103.1. The Bureau of Citizenship and Immigration Services (BCIS) is an agency within the Department of Homeland Security to whom the Secretary's authority has in part been delegated, and is subject to the Secretary's supervision. More specifically the BCIS is charged with adjudication of visa petitions, naturalization petitions, and all adjudications conducted at service centers.

5.     Evelyn UPCHURCH is the Director of the INS Texas Service Center ("TSC"), and is named as a Defendant in her official capacity. As Director of the TSC, Ms. UPCHURCH is responsible for supervising all Service Center personnel, and for

adjudicating employment-based nonimmigrant visa petitions filed within the jurisdiction of her Service Center.  8 CFR §214.2(l)(2)(i).

## JURISDICTION

6.     Jurisdiction in this case is proper under 28 U.S.C. §1331, in that this is a civil action arising under the Constitution and laws of the United States.

7.     Authority to grant the requested injunctive relief in cases otherwise within the court's jurisdiction is conferred by 28 U.S.C. §2201(a).

## VENUE

8.     Venue is proper in this court, pursuant to 28 U.S.C. §1391(e), in that this is an action against officers and agencies of the United States in their official capacities, brought in the District where a Defendant resides and where a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred.  More specifically, Plaintiffs' petition to extend SHAH's L-1A nonimmigrant status was denied by the Texas Service Center, located in Dallas and Mesquite, Texas.

## EXHAUSTION OF REMEDIES

9.     Plaintiffs have exhausted their administrative remedies.  After the denial of the petition to extend SHAH's nonimmigrant visa on September 23, 2003, Plaintiffs

**PLAINTIFF'S ORIGINAL COMPLAINT**          **PAGE  4**

administratively appealed to the CIS Administrative Appeals Office (AAO) under 8

C.F.R. §103.3(a).  On February 23, 2005, the AAO denied the Plaintiffs' petition

appeal.  There are no other administrative remedies requiring exhaustion.

## CAUSE OF ACTION

10.   On or about May 8, 2003, the plaintiff filed for an extension of his L-1A visa (Form

I-129).  The L-1A visa, as provided under INA §101(a)(15)(L), allows for the transfer

of an alien employed abroad to the United States to work for the same employer or

a subsidiary or affiliate thereof.  The visa conditions require that the intracompany

transferee be either of "managerial capacity" or "executive capacity" as defined in 8

CFR § 214.2(1)(ii).  Plaintiffs had already qualified for the L-1A status by virtue of

the petition initially approved in May 2000.  The petition filed in May 2003 was

therefore to extend the validity of Plaintiff's initially approved L-1A.

11.   Notwithstanding that his initial petition had been approved in the L-1A category, on

September 25, 2003 Plaintiffs received notice of the denial of the visa on the basis

that beneficiary did not manage or direct the management of a department, function,

or component as required under 8 CFR §214.2(1)(ii).

12.   The plaintiff made a timely appeal to the Office of Administrative Appeals (AAO)

on November 25, 2003 which also denied the visa on a similar basis on February 23,

2005.  The Order by the AAO scrutinized what proportion of SHAH's time is spent

**PLAINTIFF'S ORIGINAL COMPLAINT**                                    **PAGE 5**

performing "managerial" tasks. The AAO recites that a "manager" must "primarily" be engaged in management functions, and that a person "who primarily performs the tasks necessary to produce a product or to provide services is not considered to be employed in a managerial or executive capacity."

13.    As will be later described, management of an "essential function" qualifies as employment in a managerial capacity.  The decision by the AAO is contrary to the Immigration and Nationality Act, because data processing is an "essential function" of SELECTIONS' business operations, all of the tasks performed by SHAH are essential to SELECTIONS, SHAH functions at the highest levels of SELECTIONS with regards to the function managed, and therefore his employment qualifies as "managerial." INA §101(a)(44)(A), 8 U.S.C. §1101(a)(44)(A).

14.    It is clear from the definition added by Immigration Act of 1990 that the term "managerial" includes management of an "essential function."   INA §§101(a)(44)(A), 8 U.S.C. §1101(a)(44)(A). Congress specifically added considerable language to the Act to clarify that the number of employees supervised was not to be overly emphasized in adjudicating L-l eligibility.  The definition now provides that the manager must supervise other supervisory, professional or managerial employees *or* manage an essential function, not both. The statutory language makes the requirements concerning the nature of any supervised employee, and the extent of authority over that employee, completely **immaterial** for the manager of "an essential function of the organization" who functions at a senior level.

15.     This statutory definition of "managerial" capacity was expressly recognized by the former

INS to evidence a Congressional intent to expand the L-1 category.  When new rules were

proposed to conform the regulations to the new statutory requirements, the explanation

submitted by the Service stated:

> The intent of Public Law 101-649 as it relates to the L classification
> was to *broaden* its utility for international companies.  To comply
> with Congressional intent, this proposed rule adopts the *more liberal*
> definitions of manager and executive now specified in section
> 101(a)(44)(A) and (B)of the Act.

56 FEDERAL REGISTER 31553 (July 11, 1991).  In denying Plaintiffs' petition,

however, Defendants have applied the wrong standards.

16.     Unfortunately, in denying Plaintiffs' petition, the AAO has relied upon a rationale

developed under prior law, before the creation of the "function manager." The AAO

acknowledges the existence of a "function manager" who may not supervise or

control the work of a subordinate staff but instead is primarily responsible for

managing an "essential function" within an organization.  The AAO makes the

mistake, however, of insisting that the "function manager" cannot himself perform

the function but must, apparently, manage others performing the essential function.

17.     In so doing, however, the AAO has cited to an administrative precedent that

antedates the 1990 amendments, and which relies upon obsolete language in the

regulations that was removed subsequent to said amendment. The "management" of

**PLAINTIFF'S ORIGINAL COMPLAINT**                                      **PAGE  7**

an essential function does not require the management of others, as Congress clearly recognized in 1990 by distinguishing between managers who supervise other employees and those who manage an essential function. INA §101(a)(44)(A), 8 U.S.C. §1101(a)(44)(A). Undoubtedly, Congress intended for a more liberal approach which allowed for the management or performance of an essential function to qualify as managerial.

18.    The operation of the computer systems and website for SELECTIONS, a jewelry company which largely conducts its business online, is clearly an essential function of the company. Without the operation of this function vendors would not be paid, goods would not be sold or shipped, and accounts would not be collected. It is unquestionable that SHAH is entirely responsible for the management of this function and reports directly to the President of the company. As in many, many other companies, the EDP manager is of vital importance. Yet, SHAH needs no subordinate employees -- only a powerful computer with the necessary peripherals and applications software. To manage this essential function of the company, SHAH needs primarily to sit behind and work through his computer. Ironically, that is precisely what the AAO erroneously finds incompatible with his being a "manager."

19.    Plaintiff has no adequate remedy under law. As noted above, Plaintiff has exhausted his administrative remedies.

**PLAINTIFF'S ORIGINAL COMPLAINT**                    **PAGE 8**

# PRAYER

20.     WHEREFORE, Plaintiffs respectfully pray that the Defendants be cited to appear

herein and that, upon due consideration, the Court enter an order:

(a)     vacating the judgement by the AAO,

(b)     granting the extension of the L-1A visa,

(c)     awarding reasonable attorney's fees, and

(d)     and any other remedies as justice may require.

Respectfully submitted,

QUAN, BURDETTE & PEREZ, P.C

BRIAN K. BATES
Counsel for Plaintiff
Texas Bar No. 01899600
5177 Richmond Ave., Suite 800
Houston, TX 77056
(713)625-9225   FAX: (713)625-9295

**PLAINTIFF'S ORIGINAL COMPLAINT**                              **PAGE  9**

# LIST OF ATTACHMENTS

A.    Original L-1A approval notice, valid June 1, 2000 to May 31, 2003

B.    TSC denial of extension petition, dated September 2003

C.    AAO Decision, dated February 23, 2005

**PLAINTIFF'S ORIGINAL COMPLAINT**                                    **PAGE  10**

**U.S. Department of Justice**
Immigration and Naturalization Service

## Notice of Action

### THE UNITED STATES OF AMERICA

| RECEIPT NUMBER SRC-00-134-52117 | | CASE TYPE I129 PETITION FOR A NONIMMIGRANT WORKER | |
| --- | --- | --- | --- |
| RECEIPT DATE April 3, 2000 | PRIORITY DATE | PETITIONER SELECTIONS INC C MAHENDRA JEWELS | |
| NOTICE DATE May 3, 2000 | PAGE 1 of 1 | | |

| | |
| --- | --- |
| YVONNE KOOPMAN<br>GEE AND KOOPMAN PC<br>2620 FOUNTAINVIEW STE 250<br>HOUSTON TX 77057 | Notice Type: Approval Notice<br>Class: L1A<br>Valid from 06/01/2000 to 05/31/2003<br>POE: HOUSTON, TX |

The above petition has been approved, and cable notification has been sent to the listed consulate. You may also send the tear-off bottom part of this notice to the worker(s) to show the approval. Please contact the consulate with any questions about your approval. THIS FORM IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.

Petition approval does not authorize employment. When the workers are granted status based on this petition they can then work for the petitioner, but only as detailed in the petition and for the period authorized. Please contact the IRS with any questions about tax withholding.

If circumstances change, the petitioner can file Form I-824 to have us notify another consulate of this approval. If any of the workers are already in the U.S. the petitioner can file a new Form I-129 to seek to change or extend their status based on this petition. Changes in employment also require a new petition. Include a copy of this notice with any other required documentation.

Number of workers: 1

| Name | DOB | COB | Class | Consulate or POE | OCC Code |
| --- | --- | --- | --- | --- | --- |
| SHAH, TEJAS P | 12/15/1979 | INDIA | L1A | MUMBAI | 012 |

Please see the additional information on the back. You will be notified separately
IMMIGRATION & NATURALIZATION SERVICE
TEXAS SERVICE CENTER
P O BOX 851488 - DEPT A
MESQUITE TX 75185-1488
**Customer Service Telephone: (214) 381-1423**
Form I797B (Rev. 09/07/93)N

Please tear off portion below and forward it to the alien worker.

The alien may use this portion when applying for a visa at an American consulate abroad, or if no visa is required, when applying for admission to the U.S.

Receipt#: SRC-00-134-52117        Case Type: I129
Notice Date: May 3, 2000        Petitioner: SELECTIONS INC C MAHENDRA JEWELS
Petition Validity Dates: 06/01/2000 through 05/31/2003        Number of Workers: 1

| Name | DOB | COB | Class | Consulate or POE | OCC Code |
| --- | --- | --- | --- | --- | --- |
| SHAH, TEJAS P | 12/15/1979 | INDIA | L1A | MUMBAI | 012 |



**UNITED STATES DEPARTMENT OF HOMELAND SECURITY**
BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES
Texas Service Center
P. O. Box 852135
Mesquite, Texas 75185-2135

Douglas R Holly
Law Office of Douglas R Holly
2620 Fountain View STE 250
Houston, TX 77057

Date: **SEP 2 5 2003**
Form #:        I-129 (L-1)
Petitioner:    Selections, Inc. dba C Mahendra Jewels
Beneficiary:   Tejas Shah
File:          SRC 03 154 50344

### Notice of Decision

Upon consideration, it is ordered that your Petition for Nonimmigrant Worker (Form I-129) be denied for the following reason(s):

See Attachment

If you desire to appeal this decision, you may do so. Your notice of appeal must be filed <u>within 33 days</u> from the date of this notice. If no appeal is filed within the time allowed, this decision is final. Appeal in your case may be made to:

### COMMISSIONER

(on the enclosed Form I-290B).  (A fee of $110.00 is required).

If an appeal is desired, the Notice of Appeal shall be executed and filed with <u>this</u> office, together with <u>the required fee</u>. A brief or other written statement in support of your appeal may be submitted with the Notice of Appeal.

Any questions which you may have will be answered by the local immigration office nearest your residence, or at the address shown in the heading to this letter.

Sincerely,

Evelyn Upchurch
Director
#206

1

## Attachment

The petitioner is filing a Petition for Nonimmigrant Worker (Form I129) to seek classification of the beneficiary as an "L1A" so he may render services for the United States entity as the EDP manager.

Title 8, Code of Federal Regulations, Section 214.2(l)(1)(ii), states in pertinent part:

(A) *Intracompany transferee* means an alien who, within three years preceding the time of his or her application for admission into the United States, has been employed abroad continuously for one year by a firm or corporation or other legal entity or parent, branch, affiliate, or subsidiary thereof, and who seeks to enter the United States temporarily in order to render his or her services to a branch of the same employer or a parent, affiliate, or subsidiary thereof in a capacity that is managerial, executive, or involves specialized knowledge. Periods spent in the United States in lawful status for a branch of the same employer or a parent, affiliate, or subsidiary thereof and brief trips to the United States for business or pleasure shall not be interruptive of the one year of continuous employment abroad but such periods shall not be counted toward fulfillment of that requirement.

(B) *Managerial capacity* means an assignment within an organization in which the employee primarily:
(1) Manages the organization, or a department, subdivision, function, or component of the organization;
(2) Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
(3) Has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) if another employee or other employees are directly supervised; if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
(4) Exercises discretion over the day-to-day operations of the activity or function for which the employee has authority. A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

(C) *Executive capacity* means an assignment within an organization in which the employee primarily:
(1) Directs the management of the organization or a major component or function of the organization;
(2) Establishes the goals and policies of the organization, component, or function;
(3) Exercises wide latitude in discretionary decision-making; and
(4) Receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

Review of the evidence shows the petitioner manufactures and imports diamond jewelry. According to the organizational chart submitted the beneficiary supervises Ms. Bindi Mehta the assistant manager of the EDP department. It was stated in the job duties of Ms. Bindi Mehta "Preparing and reviewing invoices, shipping merchandise to customers, Authorizing and approving customer returns." The petitioner has not demonstrated the beneficiary manages or directs the management of a department, function, or component of the organization. The petitioner has not established the beneficiary will be involved in the supervision and control of the work of other supervisory, professional or managerial employees who will relieve him from performing the services of the business. The majority of the beneficiaries work time would be spent in the non-executive, day to day operations of the business.

2

In view of the above, the bureau is not persuaded the beneficiaries duties in this position will be primarily those of a bona fide executive.

In the non-immigrant visa petition proceedings, the burden of proving eligibility for the benefit sought remains entirely with the petitioner. Matter of Caron International, Inc., I.D. 3085 (Comm.1998). See also Matter of Shaw, 11 I&N Dec. 277 (DD 1965). Here the burden has not been met.

In accordance with the afore-mentioned, the request for the "L-1" visa classification cannot be approved. Therefore, this petition must be denied.

3

U.S. Department of Homeland Security
20 Mass Ave. N.W., Rm. A3042
Washington, DC  20529



**U.S. Citizenship
and Immigration
Services**

SELECTIONS, INC. DBA C. MAHENDRA JEWELERS
7500 BELLAIRE BLVD. #524
HOUSTON, TX 77036

**FEB 23 2005**

File:   SRC 03 154 50344       Office:   TEXAS SERVICE CENTER   Date:

IN RE: Petitioner:     SELECTIONS, INC. DBA C. MAHENDRA JEWELERS
       Beneficiary:    TEJAS P. SHAH

Petition:     Petition for a Nonimmigrant Worker Pursuant to Section 101(a)(15)(L) of the Immigration
              and Nationality Act, 8 U.S.C. § 1101(a)(15)(L)

IN BEHALF OF PETITIONER:

DOUGLAS R. HOLLY
2620 FOUNTAIN VIEW, SUITE 250
HOUSTON, TX 77057

INSTRUCTIONS:

This is the decision of the Administrative Appeals Office in your case.  All documents have been returned to
the office that originally decided your case.  Any further inquiry must be made to that office.

Robert P. Wiemann, Director
Administrative Appeals Office

www.uscis.gov

SRC 03 154 50344
Page 2

**DISCUSSION:** The Director, Texas Service Center, denied the petition for a nonimmigrant visa. The matter is now before the Administrative Appeals Office (AAO) on appeal. The AAO will dismiss the appeal.

The petitioner filed this nonimmigrant petition seeking to extend the employment of its EDP manager as an L-1A nonimmigrant intracompany transferee pursuant to section 101(a)(15)(L) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1101(a)(15)(L). The petitioner is a corporation organized in the State of Texas that is engaged in manufacturing and importing diamond jewelry. The petitioner claims that it is the affiliate of C. Mahendra Jewels Pvt. Ltd. located in Mumbai, India. The beneficiary was initially granted a three-year period of stay to serve as the petitioner's EDP manager and the petitioner now seeks to extend the beneficiary's stay.

The director denied the petition concluding that the petitioner did not establish that the beneficiary will be employed in the United States in a primarily managerial or executive capacity.

The petitioner subsequently filed an appeal. The director declined to treat the appeal as a motion and forwarded the appeal to the AAO for review. On appeal, counsel for the petitioner asserts that the director confused the requirements for managerial and executive capacity and did not apply the appropriate standard in adjudicating the petition. Counsel further asserts that sufficient evidence was submitted to establish that the beneficiary manages a major component or function of the organization and functions at a senior level within the organizational hierarchy and with respect to the function managed. Counsel submits a brief and additional evidence in support of the appeal.

To establish eligibility for the L-1 nonimmigrant visa classification, the petitioner must meet the criteria outlined in section 101(a)(15)(L) of the Act. Specifically, a qualifying organization must have employed the beneficiary in a qualifying managerial or executive capacity, or in a specialized knowledge capacity, for one continuous year within three years preceding the beneficiary's application for admission into the United States. In addition, the beneficiary must seek to enter the United States temporarily to continue rendering his or her services to the same employer or a subsidiary or affiliate thereof in a managerial, executive, or specialized knowledge capacity.

The regulation at 8 C.F.R. § 214.2(l)(3) states that an individual petition filed on Form I-129 shall be accompanied by:

    (i)    Evidence that the petitioner and the organization which employed or will employ the alien are qualifying organizations as defined in paragraph (l)(1)(ii)(G) of this section.

    (ii)    Evidence that the alien will be employed in an executive, managerial, or specialized knowledge capacity, including a detailed description of the services to be performed.

    (iii)    Evidence that the alien has at least one continuous year of full time employment abroad with a qualifying organization within the three years preceding the filing of the petition.

SRC 03 154 50344
Page 3

 (iv) Evidence that the alien's prior year of employment abroad was in a position that was managerial, executive or involved specialized knowledge and that the alien's prior education, training, and employment qualifies him/her to perform the intended services in the United States; however, the work in the United States need not be the same work which the alien performed abroad.

The primary issue in the present matter is whether the beneficiary will be employed by the United States entity in a primarily managerial or executive capacity.

Section 101(a)(44)(A) of the Act, 8 U.S.C. § 1101(a)(44)(A), defines the term "managerial capacity" as an assignment within an organization in which the employee primarily:

 (i) manages the organization, or a department, subdivision, function, or component of the organization;

 (ii) supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

 (iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization), or if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

 (iv) exercises discretion over the day to day operations of the activity or function for which the employee has authority. A first line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

Section 101(a)(44)(B) of the Act, 8 U.S.C. § 1101(a)(44)(B), defines the term "executive capacity" as an assignment within an organization in which the employee primarily:

 (i) directs the management of the organization or a major component or function of the organization;

 (ii) establishes the goals and policies of the organization, component, or function;

 (iii) exercises wide latitude in discretionary decision making; and

 (iv) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

SRC 03 154 50344
Page 4

On Form I-129, the petitioner indicated that the beneficiary is "[r]esponsible for overall management of all data processing activitiesm [sic] including input of data; production of reports; production of in-house promotional materials using desk-top publishing, maintaining and updating company web site." In a letter appended to the petition, dated May 2, 2003, the petitioner describes the beneficiary's duties as follows:

> In this position he has developed and implemented data processing solutions to all aspects of our operations. In addition, he manages our graphics department. His primary responsibilities include overall management of all data processing activities which include accounts receivable, accounts payable, inventory control, general ledger, production of MIS reports, updating and proper storage of data, liaise with software company for periodic updates of Jewels2000 software and troubleshooting and upgrading and maintaining computers and peripherals.

In support of the initial petition, the petitioner submitted an organizational chart depicting the beneficiary's position within its "Accounts, Administration, Data Processing." Department. The organizational chart shows that the beneficiary supervises a design manager.

On May 28, 2003, the director requested additional evidence. Specifically, the director requested a definitive statement describing the employees that the beneficiary will be responsible for in the United States and abroad, including: (1) the number of subordinate managers/supervisors or other employees who report directly to the beneficiary, along with a brief job description of their job titles, duties and educational background; (2) if the beneficiary does not supervise any other employees, an explanation as to what essential function within the organization he manages; (3) the qualifications required for the beneficiary's position; and (4) the beneficiary's position within the organizational hierarchy. In addition, the director specifically requested that the petitioner indicate who provides the sales/services or produces the product of the business, and who is responsible for shipping and handling activities for the U.S. company. The director also requested various documents as evidence that both the foreign and U.S. entities are currently doing business.

In response, the petitioner submitted the following description of the beneficiary's duties:

> [The beneficiary] manages one of the most important functions of [the petitioner]. He is responsible for our EDP function and oversees the day to day operations of our computer systems. He operates at the highest level within the organization regarding the EDP function. The importance of the EDP function cannot be overstated. Without the proper selection and operation of our EDP department employees would not be paid, vendors would not be paid, goods would not be sold and accounts would not be collected. Our annual sales are over $10 million per year. Although he reports administratively to Mrs. Anila Parikh, it is [the beneficiary] who has control and authority of the EDP function.

The petitioner also submitted a revised organizational chart, which shows that the beneficiary supervises an assistant manager. In a supporting statement submitted with the organizational chart, the petitioner identified the beneficiary's subordinate as "EDP assistant" and states that she is responsible for preparing and reviewing invoices, shipping merchandise to customers, and authorizing and approving customer returns. In this

SRC 03 154 50344
Page 5

statement, the petitioner lists the beneficiary's subordinate's qualifications as a bachelor of commerce awarded in 1997 and states that the position requires knowledge of computer systems, accounting systems and a bachelor's degree in business or commerce. The petitioner further states that the general manager of the company is responsible for production and sales activities which are performed by the sales, marketing and production staff, including three marketing managers, the inventory control manager, an assistant manager, and a diamond buyer. Finally, the petitioner states that shipping and handling activities are the responsibility of the assistant manager, inventory control.

On September 25, 2003, the director denied the petition. The director determined that the petitioner did not demonstrate the beneficiary manages or directs the management of a department, function or component of the organization, nor did the petitioner establish that the beneficiary will be involved in the supervision or control of the work of other supervisory, professional or managerial employees who will relieve him from performing the services of the business. Consequently, the director concluded that the majority of the beneficiary's work time would be spent in the "non-executive" day-to-day operations of the business, and thus he would not be employed in a bona fide executive position.

On appeal, counsel for the petitioner asserts that the beneficiary manages an essential function within the company. Further, counsel contends that the director incorrectly applied both managerial and executive standards and ultimately based her decision on the definition of executive when the petitioner never claimed that the beneficiary was an executive. In addition, counsel states that the director incorrectly utilized staffing levels as a factor in making her decision when the beneficiary's duties should have instead been evaluated as those of a function manager. Counsel cites several precedent decisions in support of his assertion that staffing levels need not be used as a determining factor in order to qualify for L-1A classification. Finally, counsel contends that the director's decision is inconsistent with the approval of the beneficiary's initial L-1A petition, particularly in light of the petitioner's considerable growth in the three intervening years.

Upon review, counsel's assertions are not persuasive. When examining the executive or managerial capacity of the beneficiary, the AAO will look first to the petitioner's description of the job duties. *See* 8 C.F.R. § 214.2(l)(3)(ii). The petitioner's description of the job duties must clearly describe the duties to be performed by the beneficiary and indicate whether such duties are either in an executive or managerial capacity. *Id.* The petitioner must specifically state whether the beneficiary is primarily employed in a managerial or executive capacity. The AAO recognizes that the petitioner in this matter specified that the beneficiary will be employed in a managerial position as defined under section 101(a)(44)(A) of the Act, and notes that the director incorrectly utilized the terms "manager" and "executive" interchangeably in her decision.

Specifically, the petitioner has clearly articulated it claim that the beneficiary will serve as a function manager within its organization. The term "function manager" applies generally when a beneficiary does not supervise or control the work of a subordinate staff but instead is primarily responsible for managing an "essential function" within an organization. *See* section 101(a)(44)(A) of the Act, 8 U.S.C. § 1101(a)(44)(A)(ii). If a petitioner claims that the beneficiary is managing an essential function, the petitioner must identify the function with specificity, articulate the essential nature of the function, and establish the proportion of the beneficiary's daily duties attributed to managing the essential function. In addition, the petitioner must

SRC 03 154 50344
Page 6

provide a comprehensive and detailed description of the beneficiary's daily duties demonstrating that the beneficiary manages the function rather than performs the duties related to the function. An employee who primarily performs the tasks necessary to produce a product or to provide services is not considered to be employed in a managerial or executive capacity. *Matter of Church Scientology International*, 19 I&N Dec. 593, 604 (Comm. 1988).

In this matter, the petitioner has not provided evidence that the beneficiary would in fact manage an essential function, rather than perform the routine duties related to the function. The beneficiary is described as being responsible for "overall management of all data processing activities" and overseeing the company's computer systems, but no other management-level duties are provided. It is clear from the record the beneficiary is directly responsible for all day-to-day EDP-related activities, including implementation of data processing solutions, data input and storage, production of MIS reports, creation of in-house promotional activities, maintenance of the company web site, updating software, and maintenance of the petitioner's computers and peripherals. The petitioner states that the beneficiary manages the "graphics department" but there is no supporting evidence on record that the company has a graphics department. Further, the organizational chart in response to the director's request for evidence reveals that there is another level of management above the beneficiary that holds responsibility for accounts, administration and EDP activities. Although the petitioner claims the beneficiary reports to this manager only "administratively," and "has control and authority" over the EDP function, there is no corroborative evidence of the beneficiary's discretionary authority over the function, nor evidence to support petitioner's claim that the beneficiary functions at a senior level within the organizational hierarchy or with respect to the function managed. Going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg. Comm. 1972). The actual job duties themselves reveal the true nature of the employment. *Fedin Bros. Co., Ltd. v. Sava*, 724 F. Supp. 1103, 1108 (E.D.N.Y. 1989), *aff'd*, 905 F.2d 41 (2d Cir. 1990).

Whether the beneficiary is a managerial employee turns on whether the petitioner has sustained its burden of proving that his duties are "primarily" managerial. *See* section 101(a)(44)(A) of the Act. Here, the petitioner fails to document what proportion of the beneficiary's duties would be managerial functions and what proportion would be non-managerial. The petitioner lists the beneficiary's duties as including both managerial and operational tasks, but fails to quantify the time the beneficiary spends on them. This failure of documentation is important because virtually all of the beneficiary's daily tasks as described by the petitioner, such as troubleshooting computers and peripherals, maintaining a web site, obtaining software updates, and data entry, do not fall directly under traditional managerial duties as defined in the statute. For this reason, the AAO cannot determine whether the beneficiary is primarily performing the duties of a function manager. *See IKEA US, Inc. v. U.S. Dept. of Justice*, 48 F. Supp. 2d 22,24 (D.D.C. 1999).

On appeal, counsel for the petitioner questions the director's utilization of staffing levels as a factor in determining whether the beneficiary is employed in a managerial capacity. *See* section 101(a)(44)(C) of the Act, 8 U.S.C. § 1101(a)(44)(C). Counsel asserts that the petitioner is not using staffing levels to determine the beneficiary's classification as a manager, and that the director inappropriately applied this standard. In addition, counsel contends that it is clear from precedent decisions of the AAO that staffing levels need not be used as a determining factor in order to qualify for the L-1A classification. Counsels cites *Matter of*

SRC 03 154 50344
Page 7

*Vaillancourt*, 13 I&N Dec. 654 (Reg. Comm. 1970); *Matter of Bocris*, 13 I&N Dec. 601 (Reg. Comm. 1970); and *Matter of Pozzoli*, 14 I&N Dec. 569 (Reg. Comm. 1974), as examples of cases in which CIS found the job offered to the beneficiary to be managerial without a discussion of the job duties or levels of supervision. However, counsel did not furnish evidence to establish that the facts of the instant petition are analogous to those in the cited matters. Going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. *See Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg. Comm. 1972). Furthermore, the AAO notes that none of the cited precedent decisions turned on the qualifying nature of the beneficiary's job duties, thus a discussion of job duties or levels of supervision was understandably absent at the appellate level. It appears that counsel has misconstrued the findings of these decisions and his reliance on these precedents in this matter is not persuasive. It is noted that counsel also cites two unpublished AAO decisions on appeal. However, while 8 C.F.R. § 103.3(c) provides that precedent decisions are binding on all CIS employees in the administration of the Act, unpublished decisions are not similarly binding. Accordingly, the AAO need not and does not consider the findings of the non-precedent decisions cited by counsel.

On appeal, counsel further states that even if staffing levels are considered, the Act at section 101(a)(44)(C) states that the reasonable needs of the organization should also be considered. However, rather than discussing the organization's reasonable needs in terms of staffing, counsel goes on to note the significant growth in sales experienced by the petitioner and submits that the responsibilities of the data processing department have likewise increased, making the function even more essential to the operation of the business.

The AAO does not doubt that the petitioner has a need for the services provided by the beneficiary, or that the beneficiary performs duties that are critical to the business. However, the petitioner has not indicated that any other employee is directly responsible for any of the routine data processing, systems and computer maintenance tasks of the business, and although it is claimed that the beneficiary supervises an "assistant manager," the petitioner does not indicate that the beneficiary performs any personnel related tasks. Further, the beneficiary's claimed subordinate apparently performs shipping and customer service tasks which are wholly unrelated to the EDP function. Despite counsel's assertions on appeal that the beneficiary manages the EDP function, the mere fact that the beneficiary is the sole employee performing activities included in the EDP function does not make him the "manager" of the function by CIS definitions. To qualify as a function manager under section 101(a)(44)(A) of the Act, the beneficiary must be shown through probative evidence to exercise discretionary authority over the day-to-day operations of the function managed, and to function at a high level within the company's organizational hierarchy. Without documentary evidence to support the claims, the assertions of counsel will not satisfy the petitioner's burden of proof. The assertions of counsel do not constitute evidence. *Matter of Obaigbena*, 19 I&N Dec. 533, 534 (BIA 1988); *Matter of Laureano*, 19 I&N Dec. 1 (BIA 1983); *Matter of Ramirez-Sanchez*, 17 I&N Dec. 503, 506 (BIA 1980).

Moreover, the reasonable needs of the petitioner will not supersede the requirement that the beneficiary be "primarily" employed in a managerial or executive capacity as required by the statute. *See* sections 101(a)(44)(A) and (B) of the Act, 8 U.S.C. § 1101(a)(44). The reasonable needs of the beneficiary may justify a beneficiary who allocates 51% of his duties to managerial or executive tasks as opposed to 90%, but those needs will not excuse a beneficiary who spends a majority of his or her time on non-qualifying duties, as is the case in the instant petition.

SRC 03 154 50344
Page 8

Finally, counsel for the petitioner has noted that CIS approved the initial petition filed on behalf of the beneficiary. The director's decision does not indicate whether she reviewed the prior approval of the other nonimmigrant petition. If the previous nonimmigrant petition was approved based on the same unsupported assertions that are contained in the current record, the approval would constitute material and gross error on the part of the director. The AAO is not required to approve applications or petitions where eligibility has not been demonstrated, merely because of prior approvals that may have been erroneous. *See, e.g. Matter of Church Scientology International*, 19 I&N Dec. 593, 597 (Comm. 1988). It would be absurd to suggest that CIS or any agency must treat acknowledged errors as binding precedent. *Sussex Engg. Ltd. v. Montgomery*, 825 F.2d 1084, 1090 (6th Cir. 1987), *cert. denied*, 485 U.S. 1008 (1988).

Furthermore, the AAO's authority over the service centers is comparable to the relationship between a court of appeals and a district court. Even if a service center director had approved the nonimmigrant petitions on behalf of the beneficiary, the AAO would not be bound to follow the contradictory decision of a service center. *Louisiana Philharmonic Orchestra v. INS*, 2000 WL 282785 (E.D. La.), *aff'd*, 248 F.3d 1139 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 51 (2001).

On review, the record as presently constituted is not persuasive in demonstrating that the beneficiary has been or will be employed in a primarily managerial capacity. The record does not establish that a majority of the beneficiary's duties have been or will be directing the management of an essential function of the organization, as claimed by the petitioner. CIS is not compelled to deem the beneficiary to be a manager simply because the beneficiary possesses a managerial job title. The record indicates that a preponderance of the beneficiary's duties have been and will be directly performing the operations of the EDP function, including personally performing all routine data processing, systems maintenance and computer troubleshooting activities for the company. For this reason, the petition may not be approved.

In visa petition proceedings, the burden of proving eligibility for the benefit sought remains entirely with the petitioner. Section 291 of the Act, 8 U.S.C. § 1361. Here, that burden has not been met.

**ORDER:** The appeal is dismissed.

JS 44 (Rev 11/04)

# CIVIL COVER SHEET

3 05CV1608-K

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM)

## I. (a) PLAINTIFFS

SHAH, Tejas P. and Selections, INC.

**RECEIVED**
AUG 1 2 2005
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## DEFENDANTS

CHERTOFF, Michael- Secretary, Department of Homeland Security
UPCHURCH, Evelyn- Director, U.S. Citizenship and Immigration
Services/ Texas Service Center

**(b)** County of Residence of First Listed Plaintiff ____ HARRIS
(EXCEPT IN U S PLAINTIFF CASES)

County of Residence of First Listed Defendant ____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Brian K. Bates- Quan, Burdette & Perez, PC- 713-625-9200
5177 Richmond Ave.,Suite800, Houston, Texas  77056

Attorneys (If Known)
U. S. Attorney, Northern District of Texas

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U S Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☒ 2  U. S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl  Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt Relations | ☐ 864 SSID Title XVI | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret Inc Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer  w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer  w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U S  Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)
Brief description of cause   Petition to review agency action under 8 U.S.C. § 1101 (a)(15)(L)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F R C P  23
DEMAND $
CHECK YES only if demanded in complaint
JURY DEMAND:  ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)   JUDGE ____   DOCKET NUMBER ____

DATE ____
SIGNATURE OF ATTORNEY OF RECORD ____

## FOR OFFICE USE ONLY

RECEIPT # ____   AMOUNT ____   APPLYING IFP ____   JUDGE ____   MAG JUDGE ____