IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEJAS P. SHAH and | § | |
| SELECTIONS, INC. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:05-CV-1608-BH (K) |
| MICHAEL CHERTOFF, Secretary | § | |
| Department of Homeland Security, and | § | |
| EVELYN UPCHURCH, Director | § | |
| Texas Service Center, U.S. Citizenship | § | |
| and Immigration Services, | § | |
| | § | |
| Defendants | § | Consent Case |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the parties' consent to trial by magistrate judge and the District Court's *Order of Reassignment*, filed April 10, 2006, this matter has been transferred to this Court for the conduct of all further proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c). Before the Court are the following:

(1) *Plaintiffs' Motion for Summary Judgment* ("Pl. Mot."), filed April 11, 2007;

(2) *Plaintiffs' Memorandum in Support of Motion for Summary Judgment* ("Pl. Mot. Br."), filed April 11, 2007;

(3) *Petitioner's Appendix* ("Pl. Mot. App."), filed April 11, 2007;

(4) *Defendants' Motion for Summary Judgment* ("Def. Mot."), filed April 12, 2007;

(5) *Memorandum of Law in Support of Defendants' Motion for Summary Judgment* (Def. Mot. Br."), filed April 12, 2007;

(6) Transcript of Administrative Proceedings submitted in Support of *Defendants' Motion for Summary Judgment* ("Tr."), filed April 12, 2007;

- 1 -

(7) *Defendants' Response to Plaintiffs' Motion for Summary Judgment* ("Def. Resp."), filed May 3, 2007;[1]

(8) *Plaintiffs' Response and Authorities in Opposition to Defendants' Motion for Summary Judgment* ("Pl. Resp."), filed May 3, 2007;

(9) *Plaintiffs' Reply to Defendants' Response to Motion for Summary Judgment* (Pl. Reply"), filed May 16, 2007;

(10) *Defendants' Motion to Strike Plaintiff's Summary Judgment Evidence* ("Mot. Strike"), filed May 17, 2007;

(11) *Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment* ("Def. Reply"), filed May 17, 2007;

(12) *Plaintiffs' Response to Defendants' Motion to Strike* ("Mot. Strike Resp."), filed May 18, 2007; and

(13) *Defendants' Reply to Plaintiffs' Response to Motion to Strike Plaintiffs' Summary Judgment Evidence* ("Mot. Strike Reply"), filed June 4, 2007.

Having reviewed the pertinent filings above and the law applicable to the issues raised, the Court finds that *Plaintiffs' Motion for Summary Judgment* should be **DENIED,** and *Defendants' Motion for Summary Judgment* should be **GRANTED.**

## I. BACKGROUND

Plaintiff Tejas Shah ("Shah") is an Indian citizen who began working in December 1998 as an Electronic Data Processing ("EDP") manager for C. Mahendra Jewels Pvt. Ltd. ("Mahendra Jewels") in Mumbai, India. (Pl. Mot. Br. at 3). Plaintiff Selections, Inc. ("Selections") is a Texas corporation affiliated with Mahendra Jewels. (*Id*. at 2-3). On April 3, 2000, Selections petitioned for an L-1A nonimmigrant intracompany transfer visa for Shah. *Id*. at 3. The Texas Service Center ("TSC") approved the original L-1A visa on May 3, 2000, for a three-year period from June 1, 2000,

---

[1]Pursuant to this Court's April 12, 2006 *Order*, the deadline established for Defendants to submit their response to *Plaintiffs' Motion for Summary Judgment* was May 2, 2007. Because Plaintiffs did not object to the untimeliness of Defendants' response, the Court considers the pleading.

to May 31, 2003. (Tr. at 613). Based on this approval, the United States Consulate in Mumbai issued Shah his first L-1A visa August 1, 2000, which was valid until July 31, 2001. (Tr. at 619). Shah returned to India in May or June of 2002 and received another L-1A visa from the United States Consulate in Mumbai that was valid until May 31, 2003. (Pl. Mot. Br. at 4; Tr. at 624).

On May 8, 2003, Selections petitioned to extend Shah's L-1A visa beyond the May 31, 2003 expiration date. (Tr. at 605-06). Selections identified the basis for its petition as a "continuation of previously approved employment without change" and requested that the Immigration and Naturalization Service ("INS"), now the United States Citizenship and Immigration Services ("USCIS"), "extend or amend the stay" of Shah since he held L-1A status at the time of the petition. (Tr. at 605). Selections described the role of EDP Manager as being "[r]esponsible for overall management of all data processing activitiesm (sic) including input of data; production of reports; production of in-house promotional materials using desk-top publishing; maintaining and updating company web site." (Tr. at 606). The description also referenced an attached letter dated May 2, 2003, which stated:

> Mr. Shah has served as the EDP Manager in our Houston Office since August 2000. In this position he has developed and implemented data processing solutions to all aspects of our operations. In addition, he manages our graphics department.
>
> His primary responsibilities include overall management of all data processing activities which include accounts receivable, accounts payable, inventory control, general ledger, production of MIS reports, updating and proper storage of data, liaise with software company for periodic updates of Jewels2000 software and troubleshooting and upgrading and maintaining computers and peripherals.

(Tr. at 609-10).

On May 28, 2003, the INS requested additional evidence to support Selection's petition. (Tr. at 607-08). In addition to more information on the business activities of Selections, the INS

specifically requested the job descriptions and qualifications of the employees who reported directly to Shah. (Tr. at 607). If Shah did not supervise other employees, the INS requested that Selections "specify what essential function within the organization" he managed and his position within the organizational hierarchy. *Id*.

Selections responded on August 18, 2003, with a voluminous supplemental appendix, most of which addressed the business activities of Selections. (Tr. at 5-589). The supplemental evidence included a "definitive statement" which described Shah's job duties as "preparing and reviewing invoices; shipping merchandise to customers; authorizing and approving customer returns." (Tr. at 95). The definitive statement also noted:

> Mr. Tejas Shah manages one of the most important functions of Selections, Inc. He is responsible for our EDP function and oversees the day to day operations of our computer systems. He operates at the highest level within the organization regarding the EDP function. The importance of the EDP function cannot be overstated. Without the proper selection and operation of our EDP department employees would not be paid, vendors would not be paid, goods would not be sold and accounts would not be collected. Our annual sales are over $10 million per year. Although he reports administratively to Mrs. Anila Parikh, it is Mr. Shah who has control and authority of the EDP function.

(Tr. at 95). Selections also submitted an organizational chart that showed the EDP Manager within the "Accounts, Administration, Data Processing" department directed by Mrs. Parikh; the chart did not show a graphics department. (Tr. at 96). The chart showed that Shah managed Ms. Bindi Mehta, the EDP Assistant Manager. *Id*. Apart from this information contained in the supplemental appendix and in the initial petition, there was no additional information regarding Shah's duties or position within Selections.

The TSC denied Selection's petition for extension on September 25, 2003. (Tr. at 601-03). The decision quoted 8 C.F.R. § 214.2(l)(1)(ii), the regulations applicable to the L-1 visa petition,

and noted that Shah supervised Ms. Mehta. The decision reasoned that

> petitioner [Selections] has not demonstrated the beneficiary [Shah] manages or directs the management of a department, function, or component of the organization. The petitioner has not established the beneficiary will be involved in the supervision and control of the work of other supervisory, professional or managerial employees who will relieve him from performing the services of the business. The majority of the beneficiaries (sic) work time would be spent in the non-executive, day to day operations of the business. In view of the above, the bureau is not persuaded the beneficiaries (sic) duties will be primarily those of a bona fide executive.

(Tr. at 602-03).

Selections appealed TSC's decision to the Administrative Appeals Office ("AAO") on October 28, 2003. (Tr. at 600). Selections contended that the petition was denied because the examiner determined that Shah was not a manager when in fact he managed the vital EDP function within Selections. (Tr. at 600; *see* Tr. at 891-96). The AAO dismissed Selection's appeal on February 23, 2005. (Tr. at 590-97). In explaining its decision, the AAO criticized the TSC decision for incorrectly using the terms "manager" and "executive" interchangeably because the statutory definitions of the terms differ. (Tr. at 594). The AAO also noted that the TSC decision did not indicate whether it reviewed the prior approval of Shah's nonimmigrant petition. (Tr. at 597). The AAO stated that "[i]f the previous nonimmigrant petition was approved based on the same unsupported assertions that are contained in the current record, the approval would constitute material and gross error on the part of the director." *Id*.

In reviewing the record before it, the AAO recognized that Selections claimed that Shah was a function manager and was thus eligible for the L-1A visa. (Tr. at 594). The AAO stated that in accordance with the law and regulations, Selections "must identify the function with specificity, articulate the essential nature of the function, and establish the proportion of the beneficiary's daily duties attributed to managing the essential function." (Tr. at 594). The AAO further noted that

Selections "must provide a comprehensive and detailed description of the beneficiary's daily duties demonstrating that the beneficiary manages the function rather than performs the duties related to the function." (Tr. at 594-95). The AAO found that Selections had not provided the evidence that Shah would in fact manage the essential EDP function rather than perform the routine, day-to-day duties related to that function, and it identified a lack of corroborative evidence of Shah's discretionary authority over the EDP function or his function at a senior level within Selections. (Tr. at 595). The AAO further noted that Selections had not met its burden to show that Shah's duties were "primarily" managerial because it did not document what proportion of the duties would be managerial and what proportion would be non-managerial. *Id.* The AAO stated that "[t]his failure of documentation is important because virtually all of [Shah's] daily tasks as described...do not fall directly under traditional managerial duties as defined in the statute." *Id.* For these reasons, the AAO determined that Selections had not satisfied its burden of proof to show that Shah qualified as a function manager eligible for the L-1 visa. (Tr. at 596).

Selections and Shah (collectively, "Plaintiffs") filed the instant suit on August 12, 2005, asking the Court to vacate the judgment of the AAO and grant an extension of Shah's L-1A visa. On April 11 and 12, 2006, the parties filed cross motions for summary judgment. Plaintiffs contend that the decision of the USCIS was contrary to law and Defendants' own policies and therefore arbitrary and capricious. (Pl. Br. at 1). Defendants contend that (1) Selections failed to meet its burden to establish that Shah was eligible for the L-1A visa and (2) the decision of the USCIS was rational and supported by substantial evidence in the record. (Def. Br. at 2-3).

## II. STANDARD OF REVIEW

**A.     Summary Judgment**

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Where a court is reviewing the decision of an administrative agency, "a motion for summary judgment 'stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review.'" *Tex. Comm. on Natural Res. v. Van Winkle,* 197 F.Supp.2d 586, 595 (N.D. Tex. 2002) (citations omitted). In such a case, "'the function of the district court is to determine whether as a matter of law, the evidence in the administrative record permitted the agency to make the decision it did, and summary judgment is an appropriate mechanism for deciding the legal question of whether an agency could reasonably have found the facts as it did.'" *Id.*; *see also Willingham v. Dep't of Labor,* 475 F.Supp.2d 607, 611 (N.D.Tex. 2007) ("reviewing an administrative decision on summary judgment calls for a modified standard: whether the agency acted appropriately given the standards of review set forth by the Administrative

Procedure Act or the statute authorizing the agency's action"); *Burlington N. and Santa Fe Ry. Co. v. Bhd. of Maint. of Way Employees*, 93 F.Supp.2d 751, 756 (N.D. Tex. 2000) ("Summary judgment is an appropriate mechanism for resolving issues of law arising from a materially complete factual record.").

B.     **Scope of Judicial Review under the APA**

Judicial review of a final administrative decision involving a non-immigrant visa petition is governed by the APA. *See* 5 U.S.C. § 704; *Shine's Ranch Corp. v. Ridge*, 2005 WL 1923595, *2 (N.D. Tex. Aug. 10, 2005). Under the APA, a USCIS decision can be overturned only if a plaintiff can demonstrate that the ruling was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(A)(2); *Defensor v. Meissner*, 201 F.3d 384, 386 (5th Cir. 2000). A decision is arbitrary and capricious "only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't of Agriculture*, 991 F.2d 1212, 1215 (5th Cir. 1993) (quoting *Gibson v. U.S.*, 11 Cl.Ct. 6, 15 (1986)). Additionally, agency decisions that depart from established precedent without reasoned explanation or that fail to consider a pertinent factor will be vacated as arbitrary and capricious. *Diaz -Resendez v. I.N.S.*, 960 F.2d 493, 496 (5th Cir. 1992). The agency decision need only have a rational basis, and it does not have to be a decision which the court would have made. *Wilson*, 991 F.2d at 1215. Moreover, the agency is entitled to considerable deference in its interpretation of the governing statute. *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989) (citing *City of Austin, Texas, Brackenridge Hosp. v. Heckler*, 753 F.2d 1307, 1313 (5th Cir. 1985)). Under this deferential standard, the scope of the court's inquiry is limited to determining whether the agency action bears a rational relationship to the statutory purposes and whether there is substantial

evidence in the record to support the decision; the reviewing court may not substitute its own judgment for that of the agency. *Louisiana Env't Action Network v. U.S. E.P.A.*, 382 F.3d 575, 582 (5th Cir. 2004). In reviewing whether the USCIS abused its discretion in denying a visa petition, the court is generally limited to the agency's certified administrative record. 5 U.S.C. § 706; *Chi-Fen Chang v. Thornburgh, AG*, 719 F.Supp. 532, 535 (N.D. Tex. 1989) (review of INS preference visa decisions by the district courts is limited to the administrative record).

### III. EVIDENTIARY OBJECTIONS

Defendants object to the appendix filed in support of Plaintiffs' motion for summary judgment on the grounds that the documents are outside the administrative record. In the alternative, Defendants assert that Plaintiffs' evidence is neither proper nor competent. Plaintiffs counter that the motion to strike is untimely and that the evidence is proper.

**A.     Timeliness**

Plaintiffs contend that Defendants' evidentiary objections, which were presented to the Court in a document entitled "Motion to Strike," are untimely since they were filed more than 20 days after Plaintiffs' motion for summary judgment. In support of the 20-day deadline, they cite to Rule 12(f), which provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" provided that the motion is made before responding to a pleading or within 20 days after service if no responsive pleading is permitted. FED. R. CIV. P. 12(f). Rule 12(f), however, does not apply to the instant situation because evidence submitted in support of a Rule 56 motion for summary judgment is not considered a motion or pleading for purposes of Rule 12. *See York v. Ferris State Univ.*, 36 F.Supp.2d 976, 980 (W.D. Mich. 1998) (holding that Rule 12(f) only applies to "pleadings," which are not affidavits); *Carlson*

*Mktg. Group, Inc. v. Royal Indem. Co.*, 2006 WL 2917173, *2 (D.Minn. Oct. 11, 2006) (neither a memorandum nor an affidavit submitted in connection with a motion for summary judgment is a pleading for purposes of Rule 12(f)); *Estate of Albritton v. U.S.*, 2001 WL 34046166 (M.D. La. Dec. 10, 2001) (finding that affidavits submitted in support of motion for summary judgment are not pleadings subject the timeliness constraint imposed by Rule 12(f)).

**B.    Admissibility of Extra-Record Evidence**

Defendants next contend that the four exhibits should be excluded because they were not part of the administrative record reviewed by the AAO. Generally, when a court reviews an agency decision under the APA, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Chi-Fen Chang*, 719 F.Supp. at 535. However, some exceptions apply to the general rule that limits the scope of an APA review to the administrative record. A court may elect to allow so-called "extra-record" evidence:

(1)    when agency action is not adequately explained in the record before the court;

(2)    when the agency failed to consider factors which are relevant to its final decision;

(3)    when an agency considered evidence which it failed to include in the record;

(4)    when a case is so complex that a court needs more evidence to enable it to understand the issues clearly;

(5)    in cases where evidence arising after the agency action shows whether the decision was correct or not;

(6)    in cases where agencies are sued for a failure to take action;

(7)    in cases arising under NEPA; and

(8)    in cases where relief is at issue, especially at the preliminary injunction stage.

*ITT Fed. Servs. Corp. v. U.S.*, 45 Fed. Cl. 174, 185 (1999). Plaintiffs contend that the exhibits submitted in support of their motion for summary judgment qualify for these exceptions but do not specify which exceptions apply. (*See* Mot. Strike Resp. at 4). By the Court's own examination of the proffered evidence, exceptions 1, 2, 4, and 5 might apply to Plaintiffs' exhibits. In an exercise of its discretion, the Court determines that Plaintiffs are entitled to offer their extra-record evidence because it falls within one or more of the exceptions to the general rule limiting judicial review of administrative decisions to the administrative record. *ITT*, 45 Fed. Cl. at 185.

**C.     Specific Objections**

Defendants raise a number of specific objections to Plaintiffs' exhibits. With regard to Exhibits A, C, and D, the 1990 regulation and the two affidavits by immigration attorneys, none of these exhibits affects the disposition of the Plaintiffs' pending motion for summary judgment. Accordingly, Defendants' objections to Plaintiffs' Exhibits A, C, and D are **OVERRULED** as **moot**, and the motion to strike is **DENIED** as to these exhibits. *See Continental Casualty Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690, at *1 n.6 (N.D. Tex. Apr. 14, 2006) (overruling as moot objections to evidence that is not considered by the court in deciding motion for summary judgment).

With regard to Exhibit B, the interoffice memorandum by USCIS Associate Director William Yates, Defendants contend that the memorandum is hearsay and immaterial. (Mot. Strike at 4). Plaintiffs do not respond to these specific objections and merely assert that "[t]he idea that the Court cannot consider past law or evidence of the Defendants' own adjudicatory standards is just bizarre." (Mot. Strike Resp. at 2). The Court need not consider whether an exception to the prohibition on hearsay applies because, as discussed in Part IV.B.3, *infra*, Exhibit B does not affect the disposition

of the case. Accordingly, Defendants' objection to Plaintiffs' Exhibit B is **OVERRULED,** and the motion to strike is **DENIED** as to this exhibit.

## IV.  ANALYSIS

In support of their motion for summary judgment, Plaintiffs contend that the denial of Selection's petition to extend Shah's L-1A visa was contrary to law and Defendants' own policies. (Pl. Br. at 1).

**A.     L1-A Visa Eligibility**

The L-1 non-immigrant visa applies to employees of foreign companies who are temporarily transferred to the United States to render services to the same employer in a capacity that is managerial, executive, or involves specialized knowledge. 8 U.S.C. § 1101(a)(15)(L). The "L-1A" visa is for aliens who come to the United States to perform services in a "managerial" or "executive" capacity and who may be admitted for up to 7 years, while the "L-1B" visa is for aliens who come to perform services that involve "specialized knowledge" and who may be admitted for up to 5 years. 8 C.F.R. § 214.2(l)(12)(i). The term "managerial capacity" is defined as

an assignment within an organization in which the employee *primarily* --

(i)     manages the organization, or a department, subdivision, function, or component of the organization;

(ii)    supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

(iii)   if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; *and*

(iv)   exercises discretion over the day-to-day operations of the activity or function

> for which the employee has authority.
>
> A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

8 U.S.C. § 1101(a)(44)(A) (emphasis added). "Managerial capacity" is similar to "executive capacity," but the terms are defined differently within the statutory regulations, and "executive capacity" suggests a higher level of responsibility. *Id.*; *cf.* 8 U.S.C. § 1101(a)(44)(B); *see* 2-24 GORDON & MAILMAN, *Immigration Law and Procedure*, § 24.05(2) (2007).

The Immigration Act of 1990 eased preference visa eligibility by expanding the definition of "managerial capacity" to include a "function manager," which is sometimes referred to as a "functional manager." *IKEA US, Inc. v. U.S. Dept. of Justice I.N.S.*, 48 F.Supp.2d 22, 24 (D.D.C. 1999) (citing GORDON, *Immigration Law and Procedure*, § 24.05(2)). To be eligible for the L-1A visa as a function manager who does not supervise employees, the petitioner must show that the beneficiary primarily manages, with discretionary authority, an essential function at a senior level of the organization. *See* 8 U.S.C. § 1101(a)(44)(A).

Regardless of whether the beneficiary serves in an executive, managerial, or function manager capacity, the petitioner must submit evidence to substantiate that the beneficiary is eligible for the L-1A visa. The petition must be accompanied by:

> (i) Evidence that the petitioner and the organization which employed or will employ the alien are qualifying organizations as defined in paragraph (l)(1)(ii)(G) of this section.
>
> (ii) Evidence that the alien will be employed in an executive, managerial, or specialized knowledge capacity, *including a detailed description of the services to be performed*.
>
> (iii) Evidence that the alien has at least one continuous year of full-time employment abroad with a qualifying organization within the three years

> preceding the filing of the petition.
>
> (iv) Evidence that the alien's prior year of employment abroad was in a position that was managerial, executive, or involved specialized knowledge and that the alien's prior education, training, and employment qualifies him/her to perform the intended services in the United States; however, the work in the United States need not be the same work which the alien performed abroad.

8 C.F.R. §§ 214.2(l)(3)(i)-(iv) (emphasis added). The director, in his or her discretion, may deem other evidence necessary to support the petition. 8 C.F.R. § 214.2(l)(3)(viii). In visa petition proceedings before the USCIS, the burden is on the petitioner to establish that the beneficiary is fully qualified for the classification benefit sought. 8 U.S.C. § 1361; *Nat'l Hand Tool*, 889 F.2d at 1475.

### B. Shah's Petition

In support of their motion for summary judgment, Plaintiffs articulate three reasons for their position that the USCIS improperly denied the extension petition. The first is that the USCIS failed to consider that Shah, by virtue of his position as Selection's EDP Manager, qualified for the L-1A visa as a "manager of an essential function." (Pl. Br. at 5, 15). Plaintiffs argue that the USCIS erroneously applied the 1987 standards of managerial and executive capacity, which did not account for L-1A eligibility as a function manager. (*Id*. at 9-12). The second reason Plaintiffs believe they are entitled to summary judgment is their contention that the AAO decision is erroneously grounded upon an alleged need for subordinate employees. (*Id*. at 12-13). The third basis for Plaintiffs' motion is that the denial of the Selection's petition is inconsistent with its prior approval and contrary to the Defendants' own policies. (Pl. Br. at 16-18).

#### *1. Failure to Consider Eligibility as a Function Manager*

The first, and primary, basis for Plaintiffs' motion for summary judgment is their assertion

that the USCIS did not consider whether Shah qualified for the L-1A visa as a function manager. (Pl. Br. at 14). However, the evidence reflects that the AAO explicitly recognized that Selections articulated a claim for Shah as a function manager. (Tr. at 594). Having recognized the appropriate claim, the AAO found that based on the evidence submitted with the May 8, 2003 initial petition and the August 18, 2003 response to the request for additional evidence, Selections had not established that Shah would manage the EDP function rather than perform the duties related to the function. (Tr. at 595). Specifically, the AAO found that the job description of "'overall management of all data processing activities' and overseeing the company's computer systems" was insufficient to establish that Shah performed management-level duties. Tr. at 595; *see* Tr. at 609-10. Instead, it determined that the record showed Shah was responsible for the day-to-day operations of EDP activities, which were not managerial. (Tr. at 595). The AAO also noted that the organizational chart showed a management level above Shah with responsibility for EDP activities and that Shah's claim that he had "control and authority" over the EDP function lacked corroborative evidence. Tr. at 595; *see* Tr. at 96. Finally, the AAO found that Selection's failure to quantify the time Shah spent on managerial and operational tasks was important because "virtually all of the beneficiary's daily tasks as described by the petitioner...do not fall directly under traditional managerial duties as defined in the statute." (Tr. at 595). For these reasons, the AAO determined that Selections had not met its burden to prove that Shah's EDP duties were "primarily" managerial and that he did not qualify for a L-1A visa as a function manager. (Tr. at 595).

Plaintiffs contend that they need not establish that Shah primarily managed the EDP function, rather than performed the EDP tasks, because this requirement cited by the AAO relied on an out-dated case based on the 1987 immigration regulations that did not provide for a function

manager. (Pl. Br. at 13) (citing *Matter of Church of Scientology Int'l*, 19 I&N 593, 1988 WL 235446 (Comm. 1988)); *see* Tr. at 595. However, the AAO properly considered whether Shah qualified as a function manager, a classification that was added in the Immigration Act of 1990. The preamble to the current definition for managerial capacity, which includes the function manager, clearly requires a showing that Shah "primarily" manages the EDP function. 8 U.S.C. § 1101(a)(44)(A). Similarly, Plaintiffs rhetorically ask whether it was necessary for them to document how many keystrokes per day were related to each aspect of the EDP function; they contend that the job description of "overall management of all data processing activities" sufficiently established Shah's management duties. (Pl. Resp. at 16). This unsubstantiated assertion is contradicted by recent case law, which makes clear that general descriptions of duties are insufficient to establish whether a beneficiary's duties are primarily managerial. *See Shine's Ranch*, 2005 WL 1923595, at * 3 (holding that general descriptions were insufficient to establish that the beneficiary's duties were primarily managerial or executive); *IKEA*, 48 F.Supp.2d at 25 (holding that it was the petitioner's burden to document the duties of a function manager, including what proportion was managerial versus what was not).

Since the evidence submitted by Plaintiffs did not establish that Shah's activities were primarily managerial, Selections did not meet its burden to show that Shah was eligible for the L-1A visa as a function manager. 8 U.S.C. § 1361; *Nat'l Hand Tool*, 889 F.2d at 1475; *Q Data Consulting, Inc. v. I.N.S.*, 293 F.Supp.2d 25, 29 (D.D.C. 2003) (declining to vacate agency decision because the USCIS made a rational determination that beneficiary's employment responsibilities were not primarily managerial).

## 2. *Requirement of Subordinate Employees*

A second basis for Plaintiffs' motion is their contention that the AAO inappropriately required a function manager to have subordinate employees. (Pl. Resp. at 5-6). Plaintiff is correct in stating that the definition of a function manager does not require subordinate employees. *See* 8 U.S.C. § 1101(a)(44)(A). However, the AAO did not impose this requirement in its review of Selection's petition; rather, the AAO found that the lack of subordinate employees, coupled with Shah's own performance of the day-to-day EDP tasks, indicated a lack of discretionary authority over the EDP function. (Tr. at 596). Pursuant to the statutory definition of a function manager and the corresponding regulations, Selections was required to submit probative, documentary evidence to support his claims that he managed, with discretionary authority, the EDP function at a senior level. 8 U.S.C. § 1101(a)(44)(A); 8 C.F.R. § 214.2(l)(3)(ii). The AAO determined that Selections had not done so and therefore was not eligible for the L-1A visa. (*See* Part IV.B.1, *supra*). Without documentary evidence, assertions of counsel that Shah managed the EDP function do not satisfy Selection's burden of proof. *Matter of Ramirez-Sanchez*, 17 I&N Dec. 503, 506, 1980 WL 121924 (BIA 1980).

## 3. *Inconsistency of with Previous Determination and Agency Policy*

Finally, Plaintiffs contend the denial of the extension petition by the USCIS was inconsistent with the agency's previous approval of Shah's visa. In support of this assertion, they cite to Exhibit B, which articulates a policy of the USCIS to give deference to the prior determination of an adjudicator that an alien is eligible for a particular non-immigrant classification. (Pl. Br. at 16-17). Plaintiffs reason that because the TSC approved Shah's L-1A visa on May 3, 2000, the USCIS should have deferred to the prior determination of his eligibility when it considered his extension

petition. (Pl. Br. at 17). However, Exhibit B also states that prior approval need not be given deference where there was a material error with regard to the previous petition. (Pl. App., Ex. B at 1). In the instant case, the AAO noted that the TSC decision did not indicate whether it reviewed the prior approval of Shah's non-immigrant petition, but that "[i]f the previous nonimmigrant petition was approved based on the same unsupported assertions that are contained in the current record, the approval would constitute material and gross error on the part of the director." (Tr. at 597). Exhibit B therefore does not apply to the instant case, and no deference was due to the previous approval of Shah's petition. Even if Exhibit B did apply, the USCIS was not precluded from denying an extension based on a reassessment of qualifications even though the beneficiary previously received a visa. *Texas A&M University-Corpus Christi v. Upchurch*, 2003 WL 21955866, at *2 (N.D. Tex. July 8, 2003) (Stickney, J.), *aff'd* 99 Fed.Appx. 556 (5th Cir. 2004).

In conclusion, it is clear from the pleadings that Plaintiffs disagree with the AAO's interpretation of "manage," but since the term is not defined in the applicable statute or regulations, the USCIS is entitled to considerable deference in its interpretation of the governing statute. *Nat'l Hand Tool*, 889 F.2d at 1475; *Boi Na Braza Atlanta, L.L.C. v. Upchurch*, 2005 WL 2372846, at *8 (N.D. Tex. Sept. 27, 2005) (Lindsay, J.). The AAO supported its rational explanation for why Shah did not "manage" the EDP function with substantial evidence, and the Court may not substitute its own judgment for that of the agency. *Louisiana Env't Action Network*, 382 F.3d at 582. Plaintiffs have not met their burden to show that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(A)(2); *Defensor*, 201 F.3d at 386. Since the evidence in the administrative record permitted the USCIS to deny Selection's petition, Defendants are entitled to summary judgment. *Tex. Comm. on Natural Res.,* 197 F.Supp.2d

at 595; *Willingham,* 475 F.Supp.2d at 611.

## IV. CONCLUSION

For the reasons stated above, *Plaintiffs' Motion for Summary Judgment* is hereby **DENIED,** and *Defendants' Motion for Summary Judgment* is hereby **GRANTED**.

**SO ORDERED** on this 10th day of October, 2007.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE